Good morning, Your Honors. My name is Jack Silver. I represent Northern California River Watch as the appellant. I'd like to reserve five minutes of my time for rebuttal. This year, you had already made a decision in the case of Headwaters v. Forest Services that affirmed the principle that a sua sponte dismissal based on res judicata is inappropriate when the district court applies the document of privity without giving an opportunity for the non-moving party to prove that they're not in privity, which is exactly what happened in our case. This case was there was a motion to dismiss that was filed. There was no oral argument, and it was decided on the papers. The judge, on her own, raised the issue of privity, and we did file a motion for reconsideration, which was not heard, so we were never able to raise issues that would show that we were not in privity. Further, it's a concern to us that she never referenced the notice letter, which was attached to the complaint and made part of the complaint and referenced it fully incorporated in the complaint, and there are several issues in there that raise a non-privity as well as destroying res judicata, the issue that other claims were presented before the court. At the excerpt of the record one on page three, Riverwatch alleged that the health and economic interests of their plaintiffs, of their members, were being affected by this pollution. Clearly, the state, even if there was privity, cannot represent these private interests, and they were alleged in there. Now, the issue is not whether or not these were alleged in great detail. The issue is really whether they were alleged at all, because all inferences... Well, but how different is that from what the state does? Well, that's a good question, and it's hard to say because there was no fact-finding. For instance, health is a private issue. If somebody's becoming sick because of this, that's not... Does Riverwatch as an association have standing to pursue damage claims on behalf of its members? They have standing to represent the interests of their members in any capacity. Now, it's not a private claim that they're representing, but their members do have a right not to become ill or have to spend extra money purifying their water or something like that in a case in which the private interests that are being protected by the court really have to do with the court's sovereign interests over its own waterways. For instance, in the Alaska case, it was recreational interests, but the court clearly recognized that the people who were doing commercial fishing, the people who were doing substance fishing, had a privacy claim in that, and they were not excluded from the court in those actions. But was it an association pursuing their private interests? It was a class action case, yes, in pursuing their private interests here, yes. But it's not the... It's kind of tricky how this all... Because on the one... I think you really have to fall in the public, but because I don't think that you can... I don't think you have standing to pursue damaged claims on behalf of your members. So you're... And if you get in the public domain, then it looks more like race judicata is a problem to you and privity is a problem to you. Well, let's take something really simple issue. What about our members that are not citizens of California?  And on and on and on. You know, Mr. McCullough, one problem you may have, and I don't want to... Have you finished? No. Please, go ahead. Are you alleging a new wrong, a new injuries from the same wrong? No. We're alleging that in the notice letter, one of the things we notice, one of the things we describe are releases that are occurring after tanks were removed and replaced. So we're alleging new releases from different tanks. The other thing is that different from the stock case, and this is something that Judge Henderson distinguished in Bayview Hunters Point Community Association versus MTC, that you've got a continuing operation here. You've got an operation in which they're continuing to put products into here and they're continuing to operate this facility. In the stock case, this was a facility that had stopped operating. There was only a continuation of a plume that was preexisting. We are alleging that there are new violations, new leaks. Judge Ferris' question leads me to ask you if you could go back a little and just give us the chronology of this so that we understand who sued who for what when. Okay. Okay? Right. Going back a bit, Northern California Riverwatch sued HPI back in 2000. The state, and this was on just a RCRA claim, the state subsequently brought a claim under California law, Prop 65, Unfair Business Practices Act, and brought an action around the same time. Then in Judge Vaughn, Walker dismissed Riverwatch's original suit based on preclusion that under RCRA there's a statute that says that the state is diligently prosecuting an action, et cetera. Well, I've got a question about that. In your reply brief, you say Section A1B, Citizen Suit, is precluded only if the state has commenced and is diligently prosecuting an action under that section. I don't see the only if in the statute. That is in, let's see, I think the statute says that it must be has commenced and is diligently prosecuting an action under Section A1B of this section. And if you look under A1B, it says that it must be brought in district court. A1A does not require it to be brought in district court. A1B does require it to be brought in district court. But wait, wait, wait. I am confused now. Okay. Originally, both the state and your client sued? Yes. Your client's suit was dismissed. It was dismissed. The A1A was dismissed. And Judge Vaughn Walker agreed that the A1B would not normally be dismissed. And it was dismissed on other grounds. It was dismissed on notice and not dismissed on the fact that it was preempted. He agreed that it wasn't preempted. And we do give you that holding in our actions. Right. Okay. So that was dismissed, and the state's action went forward? The state action went forward. And it resulted in? A consent decree, though there was no litigation per se. A consent decree. Right. You had not previously been dismissed on the merits of any adjudication, I take it? No. Okay. So the state's action went forward. It was a consent decree. Yes.  2001, April 2001. Okay. Then what was the next thing that happened? Then in 2003, we filed another action against Humboldt Petroleum for three sites that we alleged were having new violations that were not alleged in the previous sites and were not arising out of the other violations. And were not in violation of the consent decree? No. No. Well, we did allege violations of the consent decree when we alleged that they failed to follow the plans and so forth, but that was not part of the new claims. The new claims were that there were new violations. But they were three sites. They were three places that were in the consent decree. They were all in the consent decree, yes. They were all in the consent decree. Right. And it was the same type of harm. It was just happening on ñ it was continuing to happen. Right. But the consent decree itself allowed for continuing ñ for bringing actions for continuing violations. The consent decree did not exclude violations that were subsequent. Can I contemplate? The consent decree was signed by Humboldt and the State of California? Yes. Okay. So you were not a party to that consent decree. No. And are you ñ is the grattlement of your action here violations of the consent decree? No. No. The grattlement of ours is that rescue ñ well, two things. Rescue doesnít apply. And the other one is that ñ No, no, no. What are you complaining about? What do you want to stop? What are you ñ Oh, in ñ Is it violations of the consent decree? No. We want to stop these new releases from occurring and basically polluting the environment and affecting our neighbors. And are they accruing in violation of the consent decree, or are they totally different? Theyíre totally different. The consent decree began and ended ñ it ended in April 2001, and by its own term, terminated only violations that occurred after that date. So it didnít even cover violations ñ continuing violations that occurred after that date. It itself left itself open to allow litigation specifically to continue violations. Has the state done anything? No. No. There is no evidence from what we can see that thereís a follow-up. I donít see how itís a different harm. It seems to be the same primary right. It just seems to be more of the same. Well, the primary right comes out of the same operative facts. These are different operative facts. If you have new tanks ñ Itís a different day. Well, if you have new tanks and you have new leakages, those are completely new facts. You canít have a consent decree that gives you a perpetual shield into the future. Letís say that they completely remove this facility and somebody else puts a gasoline station there with brand-new tanks, and then those tanks leak. Does that mean that they have a shield, too, because theyíre owned by the same company? Weíre essentially talking about a reconstruction here and then new violations that are occurring. I think that if you look at ñ again, Judge Henderson deals with exactly the same point in the Bayview case, and he references Lawler v. National Screen Service Corp., which is a Supreme Court case, for the proposition that prior judgments do not bar subsequent violations. Well, I guess is it fair to say that your more fundamental point here that we need to decide, without getting into all these details about whether itís the same tank or where itís located, is that this was done sui sponte by the district court and all this should go back and be looked at by the district court? There was no evidence that inferences were made in our favor. All inferences were made against us. And the court should really change that. Are we talking about fact-finding or are we talking about the scope of that consent decree or fact-finding, whether or not proper facts were alleged in the complaint and whether we should infer those facts to new violations or to lack of scrutiny, either one or the other. But, yeah, again, we were not given an opportunity to respond to the court, and we believe tható So why werenít you present? Right. So it was just raised without any notice to us at all. Thereís several places that we do allege new violations, and I can give you those. One is on Excerpt of the Record 1, page 14, page 6 and page 12, and weíre talking about the continuing violations of standards that are occurring there. And I understand what the court is saying. Yes, obviously weíre talking about an oil spill. Obviously weíre talking about contamination to groundwater and so forth and so on. But weíre also talking about something that the court never talked aboutó Iím sorry, the consent decree never talked about, was never raised at all, and that is the washing off of petroleum products from the surface of the facility to surface waters. And that was alleged in Excerpt of the Record 1 on page 5 and on page 7. This is a completely transactionally different set of facts, completely transactionally different criteria, and the harm is completely different here. Instead of alleging harm to groundwater and to aquifers, which was what was in the consent decree, weíre alleging harm to surface waters. And so, again, I think that weíre just asking that the court remand this back for further fact-finding. We believe that, given an opportunity, weíll be able to develop facts that show that that question kind of just does not apply. Okay. Thank you. Good morning. May it please the Court, my name is Jeff Yost. I represent Humboldt Petroleum, Inc. Iím a Thielen reading priest. Humboldt is the appellee here. You have to keep your voice up. I apologize. The key issue in this case is whether Riverwatch, the appellant, has pled a new wrong. And what weíre saying is they have not pled a new wrong. All they have pled is potentially new harm and new legal theories based on the same set of operative facts. Did you argue that in the district court? We did argue res judicata, yes, we did. And we did argue strenuously against any claim that there was any new harm resulting from continuing migration. And thatís why we cite the stop case. Well, heís, you know, Riverwatchís counsel is claiming that this was sua sponte, it comes all as a surprise, and so it should go back. Of course, heíll argue that he should win there, but by the same token, heís arguing that he never really got a chance to address it. Whatís your response to that? I understand, and we would disagree vigorously with that, because unlike the Headwaters case, which Riverwatch submitted last week, in the Headwaters case, the judge, apparently, the complaint came in, and the judge took a look at it and threw it out right away without even a 12B6 motion. In this case, the appellee did bring a 12B6 motion, and the main thrust of that motion was res judicata as to all claims. Privity is an element of res judicata. Itís not up to the moving party to bring up issues that the responding party would have to bring up in their opposition. We raised the issue, if they want to respond with a privity argument, they could have done that in their opposition. And unlike in the Headwaters case, they did have an opportunity to bring up privity in a written opposition submitted to the judge. Itís clear in Judge Armstrongís standó The privity issue wasnít reallyóI mean, these are clearly different parties. Normally, for res judicata, you need the same parties. These are different parties, but in this instance, under Gwaltney and under Staub, the State of California represents its citizens in the original action by the DA of Humboldt County and in the consent judgment that resulted. So any suit by any citizen, whether itísówould be barred by res judicata once the State brings an action? If the suit arises from the same wrongs and alleges only public rights, that is true. Humboldt is not saying that itísó Did you argue they were the same wrongs? In the motion to dismiss? Yeah. Yeah. We did, because the way it came up was that Riverwatch said, but the contamination continues. Thereís new migrations. Thereís new violations every day. But the issue wasóthe trouble with this site was these three sites were the underground storage tanks that had been removed. And everybody knows that in an environmental contamination case, you can have a great investigation plan, a remediation plan, but the contamination may continue to move over the sometimes years it takes to clean up the site. If it were true that any time contamination moved and there were a new RCRA violation, a violation which has already been addressed by the consent judgment, that a private citizen suit plaintiff could then say, ìAha, you have a new violation because today that contamination moved another three inches.î Of course the State isnít enforcing the decree. Of course the State has an obligation to do this, but the State of California doesnít have any money, or itís distracted, or whatever. And there are all kinds of things that need attention environmentally in the State of California. So once the State enters into a consent decree and settles the lawsuit, whether fairly or unfairly, all of the citizens are barred from complaining about anything that may be related to that lawsuit? Is that relevant? No. If the State is not diligently enforcing the consent judgment, or if thereís a breach of the consent judgment, or if it turns out that the State tried but not diligently, then there would be a case for a citizen suit. Thatís supplementing, thatís helping the State. Thatís allowed. But the problem is in the complaint hereó We never got to that here, did we? No. And the complaint does not allege that the consent judgment was breached. It does not allege even that it was not diligently enforced, or that theó No, but the district court went off on privity. It said anybody, any citizen is in privity with the State, which essentially means youíre stuck. And there was never, you know, we never got to the question of was there diligent enforcement. And that, it seems to me, is not an issue for this Court. That should have been hashed out in the district court by giving some notice that thisó there seems to be an issue of privity here. Letís see what you have to say about it. Then we wouldnít be here. Yes, and that issue was not hashed out because the issue of new wrongs and setting apart the Riverwatch group from the State was not pled in the complaint. What theyíre doing is picking at the settlement that the State reached with Humboldt. Theyíre saying itís not going to be cleaned up fast enough. Are you using the best available technology? What was your res judicata argument? Our res judicata argument was firstó Does that decree? The first one actually below was the Riverwatch 1 Judge Walker dismissed, and that dismissal was with prejudice. And that contains all the same claims that are brought in Riverwatch 2, the case thatís before the Court today. The next argumentó Was the district court wrong? No. The district court grabbed on to the consent judgment and said, ìThis consent judgment is in the public interest.î ìSo is the Riverwatchís claim.î ìThis consent judgment is about these three sites and these three sets of tanks that have been pulled.î ìAll Riverwatch is alleging is that the contamination continues to migrate.î Thatís no surprise to anybody. The issue with what Riverwatch is trying to do here is to say that theyíre trying to get around the consent judgment by saying theyíreó When you say the district court grabbed on to the consent judgment, did you argue that the consent judgment is there and they are in privity with the state, and therefore this consent decree bars them? We did. We did argue that the consent decree bars both the 17200 claimsó Right. And the RCRA A1A violation of law claims. Below we argued with respect to the A1B claims, the endangerment claims, that the notice attached to the complaint did not properly give HPI, Humboldt Petroleum, notice of what the claim would actually be. But that wasnít the basis of the decision. No. Judge Armstrong saidónever addressed the notice. Judge Armstrong looked at all the claims and said everything is barred by the consent judgment  could have brought with respect to this same set of operative facts. And thereís no limitation there that itís just state claims oró Well, weíll settle this with HPI, but we will let a private plaintiff come in later and bring in a RCRA claim. Let meójust so that I understand your argument correctly, when we were talking about privity, you said, okay, you argued the res judicata, and what youíre saying is that Riverwatch had an obligation toóin its response, if they wanted to say that they werenít in privity, they should have said that there because itís a subset of res judicata. I mean, itísóyou say there isnítóres judicata doesnít apply because weíre not in privity, right? Thatísó And they did not do that. They did not argue that there was no privity in opposition to our 1206 motion. We submit tható You argued that they were in privity, and thatís what I said. To be candid, I donító I donít think so. I donít think thereís a section in the 1206 motion that argues privity. And weóour point is that itís not up to us to raise their defenses for them. If they thought there was a privity problem, which we didnít see because this is a state acting in the public interest, and Riverwatch purporting to act in the public interest, the privity doesó Okay. Well, what Riverwatch is saying is tható It seems to me the only argument theyíre making on privityóI may be oversimplifyingó is that they may have citizens that are not California residents. We donít see that in the complaint or the notice. And even if there were citizens that were not California residents or members of Riverwatch, we question whether they even have standing to bring a claim in the public interest in California about use and enjoyment of California natural resources. Well, they areótheyíre relying on a case that was decided after this case was briefed and was pursuant to our rules. Theyíre permitted to do. And I just am not quite sure what you want us to do with Headwaters. With Headwaters? Uh-huh. The Headwaters case is completely distinguishable here because it talks about a succession of private plaintiffs. Itís a different analysis when youíre looking at, well, did this private group represent that private group? What weíre saying is itís unquestioning that the state of California represents its citizens, and thereís nothing in the complaint to set asideóto carve out Riverwatch. Counsel argue that they may be asserting claims of illness or economic harm. It is true that in the standing allegation in their complaint that they say, ìWell, our loss of use and enjoyment of these natural resources for hiking and fishing and the typical public interest claims and our health interests and our economic interests.î They make that allegation in their complaint for standing. But thereísóif you look at the claims for relief, theyíre not seeking any damages. Theyíre seeking an injunction, which the state has already obtained, and theyíre seeking civil penalties, which the state has already obtained. They are not seeking any damages. With respect to the sequence of eventsóYour Honor seems troubled. Iím just having trouble here. The state of California enters into a consent decree. For whatever reason, the harm is continuing. Now, you argue that this isóyouíve argued before the district court that this is barred by the consent decree. They presumably argue itís not. The districtóbecause itísówhat? Itís different, or theóand the district court decides the case, saying not adopting either sideís argument in total, but deciding on a very narrow issue of privilege. Is that more or less oversimplified what happened? Yes. And now youíre saying that they somehow didnít respond to this argument that the district court raised that you hadnít really talked about, and therefore theyíre out of luck with something, and that we shouldnít send it back to see whether there really is a problem here under cases that have been decided since the clarifier law with respect to this issue. Okay. And again, I wouldóthey cite the Headwaters case to say we didnít get a chance to argue, and itís justóJudge Armstrong didnít reject the complaint without considering papers. All she did was say, ìI donít need to hear oral argument,î which is fully within the judgeís rights. With respect to the chronology of events, just to clarify, the state filed against Riverwatch in April of 2000, and it was two weeks later that Riverwatch filed their suit, and then their suit was dismissed in October, and the consent judgment was entered in April of 2001. There is nothing I could find in the complaint or the notice thatís attached that suggests that thereís any new, different releases from what was already settled in the state consent judgment that occurred after the consent judgment. Itís justóif what they wanted to allege that there are new tanks and there are brand-new leaks, then they could have said that very clearly, and itís just simply not in the complaint. You wonít get to come back and eat spinach until youíve got a little time left. What you might want to doóhis primary argument, as I understand it, is privilege. ìFear not,î he says, ìand therefore they should be able to make their claim.î You want to address that probably in a way that you havenít addressed it so far, because what youówhat Iíve understood you to say is that when you raise race judicata, you automatically raise privity, and they should have then raised whatever defense they wanted to raise, and that may not be enough to keep the case from being sent back. Thatís what we need to understand. I understand. So what is your position? Our position is that privity could not have been an issue based on the allegations in this complaint, because all they were saying is that theyíre a public interest group with Californiaó  and when we looked at that and we looked at the stateís claims, the state covers claims on behalf of the citizens of California. In our mind, privity just wasnít an issue. And I ask him, ìWere there new wrongs, or is he complaining about new harms from the old wrong?î And he said, ìThere are new wrongs.î What is your answer to that? Our answer to that is that new wrongsóso far as we can tell from the complaint in the papers, the new wrongs consist of continuing migration of contamination. And we submit that in any environmental case where thereís a settlement, the contamination doesnít stop migrating just because the state has enforced a consent decree against the site owner. If that were the case, then in any settlement with a state agency in the public interest, if the very next day a private citizenship plaintiff could come in and say, ìWell, Rick has been violated again because yesterday our experts tell us that contaminationóî My short answer is that this isóthese are new harms from the same wrong. Itís all from the same operative facts. Is that your answer? That is our answer, yes. All right, because heís going to rebut, and he wants to have a clear statement to rebut. Okay, I understand. And some of the new wrongs they are arguing simply arenít alleged in the complaint, and a review of the complaint, we believe, would show that. And if I mayóif there are not any more questions, I would just conclude. Itís a case where itís been addressed in a state consent judgment. Itís been dismissed twice with prejudice by two successive district courts. To have the appellee have to respond to a private enforcement action after itís already addressed the exact same wrong would work an injustice. It would undermine the private site ownerís understanding in working with the local agency and undermine the predictability of that settlement. The bottom line is the problem has been addressed by the courts. Riverwatch doesnít like the way that has been addressed, but under Stopp and Gwaltney they donít get to second-guess what the state agency did. Thank you very much. Let me just clarify one thing about why we didnít argue privity. In the defendantís brief, they argued res judicata with regard to Riverwatchís prior case to Humboldt Petroleum. We donít argue privity because we are in privity with them, so we had no reason to argue it. The other claim that theyóunder statute, they argued preclusion. There was no issue of privity with regard to preclusion. The issue was did the state file an action or not. They did file an action. We didnít even have an argument with that. So thatís why the privity argument never came up and why we never addressed it. And when we didó  Or was it you did argue in response to the first case? Well, we argued for theóas far as the res judicata for the first case, we agreed. Whatever the decision that Judge Vaughn Walker made was res judicata with regard to the violations that occurred up to April 2001. We didnít disagree with that. And to preclusion, we didnít disagree with that. We were precluded as to all A1A violations. We were not precluded following Judge Walkerís own opinion. We werenít precluded to A1B violations. Can Ió Sure, go ahead. After when you gotóthe judge took theóyou know, you both argued, took it, didnít have oral argument on it, then you get your notice. And what did you say that you did when you saw that the judgeó I requested a motion for reconsideration. All right. And what did you say in your motion for reconsideration? What did you say in there? That privity was raised basically sui sponte and that we wanted to be able to respond to it. But it was never responded to because basically once she dismissed the case, it was a closed case. So our letter didnít even get to the court, so to speak. At least we never got a response from it. And we did talk to the clerk. Soóand she just told us that it was reallyóthe case was dismissed. So end of story. The only other things was thatóagain, letís give us a scenario that makes sense. Somebody owns a gasoline station. They have a leak. The state comes in and they do an enforcement action. They remove the tanks. They remove the piping, all that stuff like that. Thereís a continuing migration of a plume that the state somehow is supposedly taking care of. Then they put in new pipes, new tanks. They change the name of the station. But the owners stay the same. And they have more violations because theyíre dumping more fuel in there on a regular basis. And this stuff is now having more releases. Plus, theyíre having surface releases. Thatís what weíre alleging. These are the new wrongs. And to have some sort of a perpetual shield that the state themselves did not even preserveóitís not even an argument. Because, again, if the stateís preserving its right to have future claims, thereís nothing stopping us from being able to bring up future claims as well. Even if they are transactionally related, the state did not preclude its right for that. Soó And you canít be barred if they arenít barred. Even if weíre improvingó Right. We canít be barred because theyíre not barred. So, thanks very much. Thank you.
judges: Schroeder, Farris, Callahan